**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 23-cv-61039-BLOOM/Valle**

ROBERT H. TALCOTT,

      Plaintiff,

v.

JEFFREY C. KUSCH,

      Defendant.

_____/

**ORDER ON DEFENDANT'S MOTION TO DISMISS THE AMENDED COMPLAINT**

**THIS CAUSE** is before the Court upon Defendant Jeffrey C. Kusch's ("Defendant")
Motion to Dismiss the Amended Complaint, ECF No. [26] ("Motion").[1] Plaintiff Robert H. Talcott
("Plaintiff") filed a Response, ECF No. [43],[2] to which Defendant filed a Reply, ECF No. [49].
The Court has considered the Motion, all supporting and opposing submissions, the record in this
case, and the applicable law, and is otherwise duly advised. For the following reasons, the Motion
is granted.

    **I.    BACKGROUND**

This action stems from an alleged sexual battery in Paris, France, which is the basis of an
active French judicial proceeding and for which Plaintiff seeks compensation in part under French
law. The Court assumes the parties' familiarity with the facts and procedural history of this action
but sets forth the pertinent allegations of the Amended Complaint, filed on June 6, 2023, ECF No.
[8], and the parties' representations on the relevant law of France.

---

[1] Defendant also filed the Declaration of Jeffrey Kusch ("Kusch Declaration"), ECF No. [26-1], and the
Declaration of Jacqueline Laffont-Haik ("Laffont-Haik Declaration"), ECF No. [26-2].
[2] Plaintiff also filed the Declaration of Robert H. Talcott ("Talcott Declaration"), ECF No. [43-1], and an
excerpt of Defendant's February 21, 2020 deposition ("Kusch Deposition Excerpt"), ECF No. [43-2].

Case No. 23-cv-61039-BLOOM/Valle

### A.  Amended Complaint

The Amended Complaint alleges the following: On May 29, 2019, Plaintiff traveled to Burgundy, France, to celebrate his mother's wedding. Am. Compl. ¶ 8, ECF No. [8]. On the morning of June 3, 2019, Plaintiff, Defendant, and Anne Kusch (Plaintiff's grandmother and Defendant's mother) left Burgundy for Paris, where the three planned to spend a day shopping and dining. *Id.* ¶ 14. Defendant reserved rooms at the Hôtel Plaza Athénée in Paris for himself and Anne Kusch. *Id.* ¶ 15. After arriving at the hotel, Defendant began insulting hotel guests and others profanely and loudly. *Id.* ¶ 16. Defendant later escorted Plaintiff and other unspecified members of their family to "high-end bars", Defendant became intoxicated, plying Plaintiff with alcoholic drinks, and loudly insulted patrons. *Id.* When Defendant returned to the hotel, he argued with hotel management and staff.

At 10:30 p.m., Plaintiff escorted Defendant to his hotel room. Upon arriving at the room, Plaintiff learned "he was expected to share not just a room [with Defendant], but also a bed[.]" *Id.* ¶ 18. Plaintiff briefly left to escort Anne Kusch to her own separate room and returned to Defendant's room at 11:00 p.m. Plaintiff later suggested to Defendant that "it was time to go to sleep." *Id.* ¶ 21. After Plaintiff lay down in bed, Defendant allegedly made sexual contact with Plaintiff without Plaintiff's consent. *See id.* ¶¶ 22-33.

The Amended Complaint describes documentary evidence that is not in the record that pertains to the events following the hotel room incident. According to the Amended Complaint, hotel security cameras captured Plaintiff running out of the room, collapsing on a sidewalk outside the hotel, and sobbing, ostensibly after the purported nonconsensual contact. *Id.* ¶¶ 34-35. Plaintiff reported the incident via a call and text messages to Rob Kusch, Plaintiff's other maternal uncle. *Id.* ¶ 35. Plaintiff later spoke with the hotel front desk clerk to request a new room for the night. *Id.* ¶ 36. Following the assault, the parties continued to communicate. Plaintiff and Defendant

exchanged text messages on June 4, 2019. *Id.* ¶¶ 37-38. On June 20 and July 1, 2019, Plaintiff confronted Defendant about the incident in two phone calls about the assault. *Id.* ¶ 41. The Amended Complaint also describes testimonial evidence that supports the nonconsensual contact: Defendant admitted to one of his longtime friends that he had performed a sex act on Plaintiff. *See id.* ¶ 40.

Plaintiff reported the incident to the *Doyen des Juges d'Instruction du Tribunal Judiciare de Paris* ("*Tribunal*") in France and provided them with corroborating evidence, including witness statements, videos, and photographs from the security cameras at the hotel. *Id.* ¶ 42; Decl. of Robert H. Talcott ("Talcott Decl.") ¶ 3, ECF No. [43-1]. The *Tribunal* issued orders on July 5 and October 9, 2019, directing third parties to produce evidence related to the allegations. *Id.* On March 5, 2020, French authorities filed a formal criminal complaint against Defendant. *Id.* In June 2021, Plaintiff traveled to France to answer the *Tribunal*'s investigating judge's questioning concerning the night of June 3-4, 2019. *Id.* ¶ 4. France requested that the United States Government interview witnesses in this district and elsewhere in the United States pursuant to the U.S.-France Mutual Legal Assistance Treaty. *Id.* ¶ 5. In October 2022, the *Tribunal* issued a summons to Defendant, with which he complied, and Defendant appeared before the *Tribunal* on June 21-22, 2023 for questioning. *Id.* ¶ 6. Plaintiff has not filed a "civil complaint" against Defendant in France. Talcott Decl. ¶ 7.

The Amended Complaint asserts claims for Rape Under Article 222-23 of the French Criminal Code (Count I), Sexual Battery (in the alternative) (Count II), Intentional Infliction of Emotional Distress (IIED) (Count III), Defamation (Count IV), and Violation of Florida Statute § 794.026 (Count VI).[3] Plaintiff seeks compensation for "all monetary and non-monetary harm he

---

[3] The Amended Complaint does not list a Count V.

has suffered and continues to and will suffer," including lost and future salary, bonuses, earnings, and other income, as well as loss of future earning potential; pain and suffering, humiliation, embarrassment, stress and anxiety; loss of self-esteem and emotional trauma. Am. Compl. at 16. Plaintiff also seeks punitive damages. *Id.*

### B.  Applicable French Law

The following is taken from the Amended Complaint and the Declaration of Jacqueline Laffont-Haik. Article 2 of the French Code of Penal Procedure states, "[t]he civil action for compensation for damages caused by a crime, misdemeanor or contravention belongs to all those who have suffered damages directly caused by the offense." Am. Compl. ¶ 51. Paragraphs 1 and 2 of Article 4 of the French Code of Penal Procedure state,

> [t]he civil action for compensation for the damage caused by the offence provided for in Article 2 may be brought before a civil court, separately from the public action. However, the trial of this action shall be postponed until a final decision has been taken on the public action when the latter has been initiated.

*Id.* ¶ 53. Pertinent here, Article 222-23 of the French Criminal Code states: "Any act of sexual penetration, of any nature whatsoever, committed on the person of another or on the person of the perpetrator by violence, constraint, threat or surprise is rape. Rape is punishable by fifteen years of criminal imprisonment." *Id.* ¶ 48. "Rape" is a crime under French criminal law. Laffont-Haik Decl. ¶ 7.

Under Article 79 of the French Code of Penal Procedure,[4] crimes must be investigated under a specific type of investigation known as an *information judiciaire* or *instruction préparatoire*, i.e., a "judicial investigation." *Id.* Judicial investigations are conducted under the supervision of an investigating judge. *Id.* ¶ 8.a. If the investigating judge determines that there are

---

[4] The Laffont-Haik Declaration refers to the French Code of Criminal Procedure, not the French Code of Penal Procedure. *See id.* The Court assumes those terms refer to the same body of law and refers to that law by the term used in the Amended Complaint.

"serious or consistent clues" against a criminal suspect, he or she may decide to order a *mise en examen*, an act under which a crime suspect comes under formal investigation and becomes an official party to the proceedings of the judicial investigation. *Id.* ¶ 8.b. An alleged victim of a criminal suspect may initiate a judicial investigation by filing a complaint as a "civil party" absent "specific and rare exceptions". *Id.* ¶ 8.c. Alternatively, when a judicial investigation is ongoing, any person claiming to be a victim may ask to become a civil party to the proceedings of the judicial investigation. *Id.*

When the investigating judge deems his/her investigation is complete, he or she issues a decision either to dismiss the case or send it to trial, provided there are "sufficient charges". *Id.* ¶ 8.e. If the case goes to trial, the prosecutor tries the charges that arose from the judicial investigation. *Id.* ¶ 9.a. In a case where a civil party has joined the judicial investigation, the court will also rule on the civil party's action "should [the civil party] make demands", including compensation for physical damages, mental damages, moral damages, and financial damages. *Id.* ¶ 9.b.

Proceedings of judicial investigations are confidential pursuant to Article 11 of the French Code of Penal Procedure. *Id.* ¶ 10. Parties of an ongoing judicial investigation are bound not to share confidential information relating to the proceedings with third parties, including counsel to parties in other proceedings. *Id.* ¶ 11.a. No documents contained in the file of a judicial investigation may be shared with third parties. *Id.* ¶ 11.b.

### C.  The Motion

Defendant argues this action should be dismissed for *forum non conveniens* because France affords Plaintiff an adequate and available alternative forum, the private and public interest factors set forth in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947) favor dismissal, and Plaintiff can reinstate his suit in France. *See generally* ECF No. [26]. Plaintiff disputes the adequacy of the

forum in France and argues the *Gulf Oil* factors weigh strongly against dismissal, especially given the deference accorded to United States citizens who choose to sue in the United States. *See generally* ECF No. [43].

## II.   LEGAL STANDARD

Generally, in order to obtain a dismissal for *forum non conveniens*, "[t]he moving party must demonstrate that (1) an adequate alternative forum is available, (2) the public and private factors weigh in favor of dismissal, and (3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice." *GDQ Acquisitions, LLC v. Gov't of Belize*, 749 F.3d 1024, 1028 (11th Cir. 2014) (quoting *Leon v. Millon Air, Inc.*, 251 F.3d 1305, 1310-11 (11th Cir. 2001)) (alteration in original). The public factors include:

> [1] the administrative difficulties flowing from court congestion; [2] the "local interest in having localized controversies decided at home"; [3] the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; [4] the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and [5] the unfairness of burdening citizens in an unrelated forum with jury duty.

*Turner v. Costa Crociere S.P.A.*, 488 F. Supp. 3d 1240, 1254 (S.D. Fla. Sept. 10, 2020) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). The private factors include:

> [1] the relative ease of access to sources of proof; [2] availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; [3] possibility of view of premises, if view would be appropriate to the action; and [4] all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947); *see also Otto Candies, LLC v. Citigroup, Inc.*, 963 F.3d 1331, 1338 (11th Cir. 2020). Those factors are not exhaustive and district courts should be flexible in applying them. *King v. Cessna Aircraft Co.*, 562 F.3d 1374, 1381-82 (11th Cir. 2009).

In considering a motion to dismiss for *forum non conveniens*, courts must accept the facts in a plaintiff's complaint as true "to the extent they are uncontroverted by the defendants' affidavits." *S & Davis Int'l, Inc. v. Republic of Yemen*, 218 F.3d 1292, 1303 (11th Cir. 2000) (quoting *Taylor v. Phelan*, 912 F.2d 429, 431 (10th Cir. 1990)). A court may consider matters outside the pleadings if the defendant provides "enough information to enable the [d]istrict [c]ourt to balance the parties' interests" in ruling on a motion to dismiss for *forum non conveniens*. *See Piper Aircraft*, 454 U.S. at 258; *see also Grp. CG Builders & Contractors v. Cahaba Disaster Recovery, LLC*, 534 F. App'x 826, 829-30 (11th Cir. 2013) (holding that district court did not err in considering affidavit in ruling on a motion to dismiss for *forum non conveniens*).

## III.   DISCUSSION

Defendant must establish that "(1) an adequate alternative forum is available, (2) the public and private factors weigh in favor of dismissal, and (3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice" to prevail on a motion to dismiss for *forum non conveniens*. *Tazoe v. Airbus S.A.S.*, 631 F.3d 1321, 1330 (11th Cir. 2011) (citing *Leon*, 251 F.3d at 1310-11). The Court considers those requirements in turn.

### A.  Availability of an Adequate Alternative Forum

Defendant argues France is an available alternative forum for this action because Defendant has voluntarily appeared in proceedings in France. ECF No. [26] at 2. Defendant also argues France is an adequate alternative forum because "the remedies available to Plaintiff in France are more than adequate." *Id.* at 3. Plaintiff only disputes the adequacy of French proceedings, arguing that Plaintiff's defamation, IIED, and Section 794.026 claims are not cognizable there. ECF No. [43] at 5-6 (citing *Todd Benjamin Int'l, Ltd. v. Grant Thornton Int'l, Ltd.*, No. 20-21808-CIV, 2023 WL 4457458, at *8 (S.D. Fla. July 11, 2023) ("To be available, a foreign forum must be able to assert jurisdiction over the matter whose transfer is sought.")).

Defendant first replies that the adequacy of an alternative forum does not depend on the existence of an identical cause of action, and dismissal may be appropriate despite the absence of certain legal claims. ECF No. [49] at 4-5.

A defendant bears the burden of persuasion to demonstrate the availability of an adequate alternative forum. *Leon*, 251 F.3d at 1311. An alternative forum is "available" when the foreign court can assert jurisdiction over the litigation sought to be transferred. *Id.* (citing *Piper Aircraft*, 454 U.S. at 254 n.22, 102 S. Ct. 252) ("Ordinarily, [the requirement of an alternative forum] will be satisfied when the defendant is 'amenable to process' in the other jurisdiction." (citation omitted)). As to the adequacy of the foreign court, the Supreme Court has noted that dismissal may be improper where "the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all." *Piper Aircraft*, 454 U.S. 235, 254, 102 S. Ct. 252, 265. The Eleventh Circuit has interpreted that observation to mean that dismissal for *forum non conveniens* may be appropriate where the remedies available to a plaintiff in the alternative forum are not clearly unsatisfactory and do not amount to any remedy. *See Satz v. McDonnell Douglas Corp.*, 244 F.3d 1279, 1283 (11th Cir. 2001) (finding district court did not abuse its discretion in finding that Argentina was an adequate forum for the case); *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 952 (11th Cir. 1997) (holding that claims against foreign entities were subject to *forum non conveniens* dismissal where the defendants "presented sufficient proof to demonstrate that the remedies available under [the plaintiff's] claims are not 'so clearly inadequate or unsatisfactory that [they are] no remed[ies] at all.'"). Moreover, "[t]he adequacy of the forum also 'does not depend on the existence of [an] identical cause of action in the other forum.'" *See Jiangsu Hongyuan Pharm. Co. v. DI Glob. Logistics Inc.*, 159 F. Supp. 3d 1316, 1329

(S.D. Fla. 2016) (quoting *Norex Petrol. Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 158 (2d Cir. 2005)).

The Court agrees with Defendant that France provides an available and adequate alternative forum for this action because France's remedies are not so clearly inadequate or unsatisfactory. The record does not support that Plaintiff has become a "civil party" to the *Tribunal*'s judicial investigation of the underlying conduct in this action. *See* Talcott Decl. ¶ 7 ("I have never filed, instituted or otherwise commenced – or authorized anyone else to file on my behalf – any civil against [Defendant] in France. And in fact -- there is no civil complaint filed or pending against [Defendant] in France"). Nevertheless, the Laffont-Haik Declaration supports that Plaintiff may become a civil party to the judicial investigation. Laffont-Haik Decl. ¶ 8.c. Moreover, pursuant to Article 4 paragraphs 1 and 2 of the French Code of Penal Procedure, "a civil action for compensation for the damages caused by the offence provided for in Article 2 may be brought before a civil court, separately from the public action." Am. Compl. ¶ 63. The record supports that the *Tribunal*'s judicial proceeding is one from which a "public action" may arise. *See* Laffont-Haik Decl. ¶ 9.c (describing the public prosecutor's action). The record also supports that Plaintiff may bring a civil action independent of the judicial proceeding because Plaintiff brings a claim for rape under Article 222-23 of the French Criminal Code, a crime under Article 2 of the French Code of Penal Procedure. *See* Am. Compl. ¶¶ 54-65 (describing alleged rape). On the record before the Court, Plaintiff may bring a civil action as an alleged victim of Defendant, either as part of the judicial investigation or independently. France therefore provides an available alternative forum.

France also affords an adequate alternative forum. The Laffont-Haik Declaration supports that a civil party may seek damages arising from a crime, which include physical, mental, moral, and financial damages. Laffont-Haik Decl. ¶ 9.b. Thus, Plaintiff may obtain compensation for "lost

and future salary, bonuses, earnings, other income, pain and suffering, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional trauma, and loss of future earning potential." Am. Compl. at 16.

To be sure, Plaintiff seeks an award of punitive damages, and the record does not indicate that punitive damages are available in France. *Id.* Nevertheless, the Court's inquiry is whether France's remedies are clearly inadequate or unsatisfactory, not whether France's remedies mirror those available in this district, and those remedies are significant, supporting a finding that France provides an adequate alternative forum. *Leon*, 251 F.3d at 1311 (noting that "Courts have been strict about requiring that defendants demonstrate that the alternative forum offers at least some relief." (citing *Mercier v. Sheraton Int'l, Inc.*, 935 F.2d 419, 425 (1st Cir. 1991))).

The Court is not persuaded by Plaintiff's argument that France is an inadequate alternative forum because France does not recognize all of Plaintiff's claims. France need not do so for it to provide an adequate forum. *See BCCI Holdings*, 119 F.3d at 952 (agreeing with other circuits that concluded plaintiff's inability to assert a RICO claim in a foreign forum does not preclude dismissal under *forum non conveniens*); *see also Todd Benjamin*, 2023 WL 4457458, at *8 ("A foreign forum is adequate when the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy the same benefits as they might receive in an American court.").

Finding that France is an available and adequate alternative forum for this action, the Court proceeds to consider the private factors.

### B.  Private Factors

"A plaintiff's choice of forum is entitled to deference, and there is a presumption in favor of a plaintiff's choice of forum, particularly where the plaintiffs are citizens of the United States." *Wilson v. Island Seas Invs., Ltd.*, 590 F.3d 1264, 1269 (11th Cir. 2009) (citing *SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A.*, 382 F.3d 1097, 1100-02 (11th Cir. 2004)). Thus, "with

regard to the weighing of the private interests, [a] plaintiff['s] choice of forum should rarely be disturbed 'unless the balance is strongly in favor of the defendant.'" *SME Racks*, 382 F.3d at 1101 (quoting *Gulf Oil*, 330 U.S. at 508, 67 S. Ct. 839)). This means that district courts '"require positive evidence of unusually extreme circumstances[] and should be thoroughly convinced that material injustice is manifest before exercising any such discretion as may exist to deny a United States citizen access to the courts of this country.""" *Id.* (citing *La Seguridad v. Transytur Line*, 707 F.2d 1304, 1308 (11th Cir. 1983)). "[T]he quantum and quality of evidence needed" to make that showing "will depend on the unique facts and circumstances of the given case." *Otto Candies*, 963 F.3d at 1348 (quoting *Lacey v. Cessna Aircraft Co.*, 862 F.2d 38, 44 (3d Cir. 1988)). For that reason, "dismissal should not be automatically barred when a plaintiff has filed suit in his home forum. As always, if the balance of conveniences suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court, dismissal is proper." *Piper Aircraft*, 454 U.S. at 255 n. 23, 102 S. Ct. 252.

The private factors include the relative ease of access to sources of proof; the availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing witnesses; the possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Gulf Oil*, 330 U.S. at 508. In weighing the private interests, the relevant forum for purposes of the *forum non conveniens* analysis is the United States as a whole. *Wilson*, 590 F.3d at 1271 (citation omitted).

"Given that Plaintiff chose [his] home forum, the Court begins by affording Plaintiff a strong presumption in [his] favor." *See Diaz v. Societe Air France Co.*, No. 20-20057-CV, 2022 WL 1400658, at *4 (S.D. Fla. Mar. 30, 2022), *appeal dismissed sub nom. Gaimbanco v. Societe*

*Air France Co.*, No. 22-11411-BB, 2022 WL 2962712 (11th Cir. June 3, 2022). The Court evaluates the parties' arguments as to each factor in turn.

### i.     *Relative ease of access to sources of proof*

Defendant argues that France affords easier access to sources of proof because the evidence and majority of witnesses necessary to adjudicate this matter are in France. ECF No. [26] at 5. Plaintiff first responds that the relevant inquiry for this factor is whether a defendant has shown that any documentary and physical evidence could not be obtained if trial were conducted in this district. ECF No. [43] at 7 (citing *Otto Candies*, 963 F.3d at 1349). Plaintiff also responds that such evidence would be obtainable once the proceedings of the judicial investigation are terminated, and hotel video evidence and certain third-party witness statements are available now. *Id.* Plaintiff further maintains that—even if such evidence could not be obtained from authorities in France—"counsel for both parties in France *already* possess [evidence in the French file], and, when appropriate pursuant to French confidentiality rules, can easily electronically send it to counsel for the parties *in this District*", and that the evidence is not strictly necessary for Plaintiff to prove his case. *Id.* at 7-8. Plaintiff relies on *Sun Trust Bank v. Sun International Hotels*, 184 F. Supp. 2d 1246 (S.D. Fla. 2001), and argues that dismissal for *forum non conveniens* is not warranted where a defendant does not show that evidence cannot be obtained in plaintiff's chosen forum. *Id.* at 8-9.

Defendant replies that *Sun Trust* is inapposite as Plaintiff's admissions and the Laffont-Haik Declaration show that "parties to this U.S. action likely will *not* be able to obtain and utilize copies of the French testimony and other evidence—including, critically, Defendant[] and Plaintiff's statements to French authorities—that is relevant to the civil case here." *Id.* (quoting Pl.'s Mot. to Stay the Case, ECF No. [39] at 3).

Case No. 23-cv-61039-BLOOM/Valle

Defendant also distinguishes *Otto Candies* on the grounds that this case concerns a tort that allegedly occurred in a foreign country, a distinction that *Otto Candies* itself recognized. ECF No. [49] at 7-8 (citing *Diaz*, 2022 WL 1400658, at *6).

As an initial matter, *Otto Candies* is not helpful to the Court's discussion because the defendant in that case presented *no* evidence relevant to the *Gulf Oil* private interest factors. *Otto Candies*, 963 F.3d at 1349. Moreover, this is not a case where a defendant has failed to show that evidence is not available in this district. *Cf. Sun Tr. Bank v. Sun Int'l Hotels, Ltd.*, 184 F. Supp. 2d 1246, 1263 (S.D. Fla. 2001) (noting that the parties were already in possession of all documents generated in connection with the accident that gave rise to the suit and defendants failed to identify any documentary or physical evidence that could not be obtained if the trial were conducted in the district).

Here, evidence would be unavailable in this district. The Laffont-Haik Declaration supports that certain evidence is not available in this district given France's confidentiality rules. Laffont Haik Decl. ¶¶ 10-11. Moreover, the Complaint and the Laffont-Haik Declaration further support that such evidence would be available were Plaintiff to join the proceedings of the judicial investigation as a civil party or institute an independent action following the public prosecutor's action. Laffont-Haik Decl. ¶¶ 8.c., 9.c.; Am. Compl. ¶ 63. As such, the record supports that evidence that would be practically *unavailable* in this district would be *available* either in the criminal proceeding or a subsequent civil action in France. Further, the Amended Complaint describes that many potential witnesses to the events following the alleged incident—e.g., hotel staff and management, bar staff and patrons, store clerks, and government authorities—were in France, supporting that many if not all are still in France, *see* Am. Compl. ¶¶ 15, 16, 36, 42; *see also* Decl. of Jeffrey Kusch ("Kusch Decl.") ¶ 3 (describing witnesses, including hotel staff and

French law enforcement, who were in France at the time of the events described in the Amended Complaint); whereas many of the other witnesses to the events in this case—the parties' family members, including the parties, Plaintiff's mother, and Robert Kusch—demonstrate a willingness and capacity to travel to France, *see id.* ¶¶ 8, 13, 14, 15, 35. That being the case, all potential witnesses to those events were in, may currently be in, or may be able to travel to, France. On the other hand, an action in this district would require many witnesses to travel to this district to provide live testimony, a circumstance that supports dismissal. *See Diaz*, 2022 WL 1400658, at *5 (finding the first *Gulf Oil* private interest factor weighed in favor of dismissal where witnesses with personal knowledge of the events that gave rise to the complaint were in Europe); s*ee also Gulf Oil*, 330 U.S. at 511 ("To fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their cases on deposition, is to create a condition not satisfactory to the court, jury or most litigants.").

Plaintiff contends that most witnesses are in the United States when considering the two dozen individuals to whom Defendant allegedly published defamatory statements about Plaintiff, a circumstance that bears upon the parties' relative access to evidence between the district and the alternative forum. ECF No. [43] at 7-8. However, the Court disagrees that the first private factor entails an exercise in counting the number of witnesses on either side of the Atlantic. More importantly, neither the Amended Complaint nor the record indicates which of those individuals heard or read the Defendant's allegedly defamatory statement or when they did so. *See* Am. Compl. ¶ 44 (describing generally that "[Defendant] has made false and defamatory statements to others about [Plaintiff], including but not limited to members of extended family, friends and other communities in central and South Florida[.]"); *see also* Kusch Dep. Excerpt at 12-13 (identifying only the individuals to whom Defendant spoke about "what took place in the Paris bedroom" prior

to June 20, 2019). Given such threadbare representations, the Court cannot determine whether Defendant's communications with any of the individuals identified in the record support Plaintiff's defamation claim. *See Fiedler v. Starwood Hotels & Resorts Worldwide, Inc.*, No. 05-61671-CIV, 2006 WL 8432489, at *2 (S.D. Fla. Feb. 22, 2006) (observing in dismissing defamation claim that "Plaintiff ha[d] not identified who made the statement, a third party to whom the statement was made, and when the statement was published"). It therefore cannot evaluate the extent to which those communications are critical, or even relevant, for the purpose of its *forum non conveniens* inquiry. *See Van Cauwenberghe v. Biard*, 486 U.S. 517, 528, 108 S. Ct. 1945, 1953 (1988) (explaining that "the district court must . . . determine whether the pieces of evidence cited by the parties are critical, or even relevant, to the plaintiff's causes of action and to any potential defenses to the action" in evaluating the first private interest factor).

As such, when the deposition testimony cited by Plaintiff is stacked against the Kusch Declaration, which describes the evidence that is subject to an ongoing criminal investigation in France, the Court concludes that the majority of the pertinent evidence is in France. That determination is consistent with the fact that this litigation is a France-centered dispute given that the events that gave rise to the suit occurred in France and critical evidence is available only in France. *See Ford v. Brown*, 319 F.3d 1302, 1309 (11th Cir. 2003) (finding that Hong Kong afforded relatively easier access to evidence because the action was a Hong Kong-centered dispute and most of the evidence existed in Hong Kong).

Because evidence from the judicial investigation is not presently available for transfer to this district, and because the Amended Complaint supports that most of the witnesses described in the Complaint are in France or can travel to France, the first factor strongly weighs in favor of dismissal.

> ii.   *Availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing witnesses*

Defendant contends the majority of the witnesses are in France and that Defendant has no control over any of those witnesses. *See* Kusch Decl. ¶¶ 3, 4. Since most of the witnesses are in France, Defendant reasons those witnesses are not subject to the Court's compulsory process. *See* ECF No. [26] at 6. By contrast, for those witnesses in the United States that are subject to the Court's process, Defendant submits that the Court may assist the *Tribunal* by requiring witnesses located in the United States to provide documents or testimony pursuant to 28 U.S.C. § 1782. *Id.* at 6 n.4.

Plaintiff does not dispute that witnesses who were located in France are not subject to compulsory process in this district but responds that the *key* witnesses reside in the United States, and the majority of witnesses reside in the United States when considering the individuals to whom Defendant made allegedly defamatory statements. ECF No. [43] at 9-10. Plaintiff further maintains that the Court may compel the attendance of certain witnesses under Rules 43 and 45 of the Federal Rules of Civil Procedure. The parties did not file affidavits concerning the costs of obtaining witness attendance.

The record supports that there are witnesses to the events following the alleged rape in France. That circumstance supports that not all of them are residents of the United States, meaning that many of those witnesses, if not all, are *not* subject to compulsory process. *See* Kusch Decl. ¶ 3 (asserting that the witnesses were in France at the time of the events and include French government officials). Moreover, as witnesses to the events following the alleged rape, their testimony is critical to the parties' cases in chief. In addition, Defendant does not control those witnesses and cannot require those witnesses to travel to this district. *Id.* ¶ 4. Accordingly, there are key witnesses who are not subject to compulsory process in this country and may be unwilling

to travel to the United States. By contrast, the key witnesses that Plaintiff describes, his mother and Robert Kusch, have demonstrated a capacity and willingness to travel to France. On balance, this factor thus favors dismissal. *See Beaman v. Maco Caribe, Inc.*, 790 F. Supp. 2d 1371, 1377-78 (S.D. Fla. 2011) ("The testimony of these individuals, who are residents and citizens of Mexico, is critical to the presentation of Plaintiffs' claims and Defendants' defenses. That these individuals appear to not be subject to the compulsory process of the Court, weighs in favor of dismissal.").

### iii.    *Possibility of view of premises if view would be appropriate to the action*

The parties do not discuss the possibility of view of the premises in this case. This is not a premises liability action, but to the extent that view of the premises is necessary to discovery in this case, this factor also favors dismissal because the Hôtel Plaza Athénée is in France.

### iv.    *All other practical problems that make trial of a case easy, expeditious and inexpensive*

Defendant contends that "the evidence is predominantly in France, held by the French, and likely written in French", making discovery in this case difficult, costly, and slow to produce. ECF No. 26 at 7. Plaintiff replies that this factor weighs against dismissal since the parties, and "few witnesses", do not understand French whereas many of the hotel witnesses in France speak English. ECF No. [43] at 10-11. Plaintiff also contends that the travel expenses for U.S. witnesses would be an egregious hardship while litigation in this district would be convenient for the parties, who reside in the United States. *Id.*

Defendant notes that Plaintiff is a resident of New York, New York, *see* Talcott Decl. ¶ 1, and observes that Plaintiff has returned to France on at least one occasion in June 2021, *id.* ¶ 4. *See* ECF No. [49] at 9. Defendant also notes that the language difficulties cut both ways, meaning that French witnesses would have difficulty with testifying in this district, and Plaintiff wrongly assumes that hotel staff are sufficiently fluent in English to testify. *Id.* Defendant also contends

that documents from France that are relevant to this action would need to be translated into English. *Id.*

This factor favors Defendant. As the Court has explained, the necessary proof in this action is mostly in France, based on the record. As such, most of the documentary evidence and testimony would need to be translated or interpreted from French to English. Moreover, a trial in this district would entail great inconvenience to witnesses in France; by contrast, Plaintiff has demonstrated an ability and willingness to participate in French proceedings, and the members of this family who were involved in the wedding have shown an ability and willingness to travel to France.

### v.  *Positive evidence of unusually extreme circumstances and material injustice*

It follows from the foregoing that private factors weigh strongly in favor of dismissal. For the reasons stated, the Court is thoroughly convinced that this case presents unusually extreme circumstances such that material injustice to *both* parties is manifest. Specifically, the foregoing demonstrates that both parties will not be able to compel third-party witnesses, or the production of documents from those witnesses. *See Tazoe*, 631 F.3d at 1335 (finding no abuse of discretion where district court concluded the "Manufacturing Defendants' inability to compel third-party witnesses or the production of documents from those witnesses, and the inability to implead potentially liable third-parties, is both unusually extreme and materially unjust"). In addition, it would be manifestly unjust for the parties to litigate this action without the benefit of the evidence adduced in the French proceedings.

The Court must note that Plaintiff seeks a stay of this action. *See* ECF No. [29] at 2 (asserting a stay is mandatory in this case because "the resolution of the pending French criminal proceedings against Mr. Kusch may well be dispositive as to Mr. Kusch's civil liability for sexual battery . . . , as well as of elements of the Plaintiff's other claims and Mr. Kusch's defenses that are at issue in this civil case."). Plaintiff describes at length the difficulties with litigating this

action during the pendency of the proceedings in France, and reasons that those difficulties militate against denying a stay. *See generally id.* However, Plaintiff ignores that the Eleventh Circuit prohibits "immoderate" stays of actions and the stay of an action that depends upon the conclusion of proceedings in a foreign country—which are progressing slowly with no date as to their termination—is indefinite in scope, and therefore immoderate, especially where Defendant opposes the stay. *See Ortega Trujillo v. Conover & Co. Commc'ns*, 221 F.3d 1262, 1264 (11th Cir. 2000) (finding the district court abused its discretion where it imposed a stay that would remain in effect until the "Bahamian Courts conclude their review").[5] Since an indefinite stay in this action would be inappropriate, this Court would require the parties to litigate this action in accordance with the Scheduling Order, a prospect which itself could work a manifest injustice.

Moreover, the prospect of a trial in this district without the attendance of key witnesses to the events following the alleged rape is fundamentally unfair. *See Gulf Oil*, 330 U.S. at 511.

Further, should the Court dismiss this action for *forum non conveniens*, it would not be denying Plaintiff access to the courts of this country. Instead, as Defendant observes, and Plaintiff does not dispute, Plaintiff can avail himself of the procedures outlined in 28 U.S.C. § 1782 to obtain documents and testimony to assist French Courts from individuals in this or any other U.S. district court, to the extent Plaintiff would seek to litigate this action in France. *See* 28 U.S.C. § 1782(a) ("The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal[.]").

---

[5] Plaintiff argues, without support, that principles of comity counsel the Court exercising its inherent power and discretion to stay the action, ECF No. [29] at 17. However, abstention is the exception to the rule and courts regularly permit parallel proceedings. *Id.*

Although the Court finds the private interest factors weigh heavily in favor of dismissal, the Court nevertheless proceeds to consider the public factors. *See Fresh Results, LLC v. ASF Holland, B.V.*, 921 F.3d 1043, 1050 (11th Cir. 2019) (explaining that "the better rule is to consider both [private and public] factors in all cases").

### C.  Public Factors

The public factors include the administrative difficulties flowing from court congestion; the "local interest in having localized controversies decided at home"; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty. *See Turner*, 488 F. Supp. 3d at 1254 (citing *Piper Aircraft*, 454 U.S. at 241 n.6).

### i.  *Administrative difficulties flowing from court congestion*

Defendant argues allowing this action to remain in this district would be an inconvenient and inefficient use of this Court's judicial resources because Plaintiff is not a Florida resident, the majority of witnesses and evidence are in France, and the district has a congested docket. ECF No. [26] at 3. Plaintiff generally disputes this action is inconvenient and inefficient and maintains that the majority of witnesses are in the United States, but Plaintiff does not address Defendant's argument concerning the Court's docket. ECF No. [43] at 11-12.

This factor slightly favors dismissal. Although this Court presides over many cases, the administrative difficulties that flow from the management and adjudication of this case are not great. However, this case would present administrative difficulties with scheduling the trial in this action within the trial period set in the Court's Scheduling Order, ECF No. [25]; as the parties recognize, testimony in this action would require the parties and the Court to coordinate the trial schedule with witness' overseas travel.

### ii.     *Local interest in having localized controversies decided at home*

Given that the events giving rise to this action occurred in France, and France imposes criminal liability for rape, France has a strong interest in prohibiting the alleged conduct on French soil. On the other hand, the United States has a strong interest in providing a domestic forum for its citizens. However, France's interest outweighs those of the United States in this case because Plaintiff traveled voluntarily to France for his mother's wedding and to assist with the ongoing criminal investigation. See *Horberg v. Kerzner Int'l Hotels Ltd.*, 744 F. Supp. 2d 1284, 1296 (S.D. Fla. 2007) ("under the circumstances of this case, especially taking into consideration the fact that Plaintiffs traveled voluntarily to The Bahamas on multiple occasions, the interest of The Bahamas outweighs that of the United States.").

### iii.    *Interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action*

Without question, courts in France are at home with the law of Count I. Moreover, that law arises from France's civil law legal tradition, a tradition of which this Court is unfamiliar. *See Ace Am. Ins. Co. v. Wattles Co.*, 930 F.3d 1240, 1255 (11th Cir. 2019) ("At least three of these countries—Mexico, Spain, and France —have legal systems that are based, at least in part, on the civil law legal traditions embodied in the Napoleonic Code." (citing *Martinez v. United States*, 828 F.3d 451, 456 (6th Cir. 2016) (noting that Mexico "models its legal system not on Blackstone's common law but on Napoleon's civil law"))).

Plaintiff correctly notes that the majority of the Counts in this action arise under Florida law. ECF No. [43] at 13. While the action litigated in France would not include the Florida law claims, that circumstance ignores that the law of France allows Plaintiff to recover based on the harms arising from Defendant's allegedly tortious statements. As previously stated, Plaintiff may recover physical, mental, moral, and financial damages. Based on this record, Plaintiff may recover

Case No. 23-cv-61039-BLOOM/Valle

from harms stemming from the events of June 3-4, 2019. Laffont-Haik Decl. ¶ 9.b. Accordingly, this factor also favors dismissal.

> ### iv.   *Avoidance of unnecessary problems in conflict of laws, or in the application of foreign law*

Litigation in France would avoid problems in conflict of laws and the application of foreign law since courts in France would apply the law of France in this case and would not independently consider the Florida law claims. By contrast, this Court would have to apply the law of France and civil law modes of reasoning. Accordingly, this factor too favors dismissal.

> ### v.   *Unfairness of burdening citizens in an unrelated forum with jury duty.*

The record does not indicate that any jury would be burdened if this action were litigated in France. A jury in this district would not be burdened given that Defendant is an American citizen who bears the benefits and burdens of United States law. *Reid-Walen v. Hansen*, 933 F.2d 1390, 1400 (8th Cir. 1991). This factor is therefore neutral.

On balance, the public interest factors weigh in favor of dismissal because four of the five factors favor dismissal, and one is neutral, and also because of the civil law nature of this action and France's superior interest in the adjudication of this action weigh heavily in favor or dismissal.

> ### D.  Reinstating Suit in Alternative Forum

The parties do not dispute that Plaintiff can reinstate this suit in France. As previously stated, Plaintiff may elect to join the public action currently in the investigative phase in France or institute an independent civil action that may be adjudicated once the public action is concluded.

> ### E.  Dismissal without prejudice

For the reasons stated above, this case is due to be dismissed. Accordingly, the Court does not reach Defendant's arguments regarding whether Counts I, IV, and VI state a claim for relief.

Case No. 23-cv-61039-BLOOM/Valle

As part of its consideration of the parties' arguments, the Court reviewed *Satz v. McDonnell Douglas Corp.*, 244 F.3d 1279 (11th Cir. 2001), where the Eleventh Circuit affirmed the district court's dismissal for *forum non conveniens*. *Satz*, 244 F.3d at 1284. In doing so, the Eleventh Circuit observed that the district court had conditioned its order of dismissal on the defendant consenting to any foreign judgment against it, agreeing to conduct all discovery in accordance with the Federal Rules of Civil Procedure, and voluntarily producing documents and witnesses within the United States. *Satz*, 244 F.3d at 1283. The Court finds it is appropriate to impose the same conditions on this Order. Alternatively, as Defendant notes, to the extent Plaintiff seeks discovery for any pending case in France, Plaintiff may file an application under 28 U.S.C. § 1782 under a different case number, and Plaintiff may obtain discovery in this district, if Plaintiff meets the requirements for relief under that provision. Should Plaintiff do so, Plaintiff must file a notice of a related action referring to this case, in accordance with the Local Rules.

IV.   **CONCLUSION**

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion to Dismiss the Amended Complaint, **ECF No. [26]**, is **GRANTED**.

2. This case is **DISMISSED WITHOUT PREJUDICE**. Dismissal is conditioned upon Defendant consenting to any foreign judgment against it, agreeing to conduct all discovery in accordance with the Federal Rules of Civil Procedure in aid of the proceedings in France, and voluntarily producing documents and witnesses within the United States for those proceedings, if Plaintiff elects to institute an action in France.

3. Plaintiff's Motion to Stay the Case, **ECF No. [29]**, is **DENIED AS MOOT**.

Case No. 23-cv-61039-BLOOM/Valle

4.  To the extent not otherwise disposed of, all pending motions are **DENIED AS MOOT** and all deadlines are **TERMINATED**.

5.  The Clerk of Court is directed to **CLOSE** this case.

**DONE AND ORDERED** in Chambers at Miami, Florida, on December 4, 2023.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record